IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
British Telecommunications plc, CIF :
Licensing, L.L.C., GE Technology :
Development, Inc., Fujitsu Limited, LG :
Electronics, Inc., Mitsubishi Electric Corp., :
Samsung Electronics Co., Ltd., Thomson :
Licensing, The Trustees of Columbia :
University in the City of New York, U.S. :
Philips Corp., Koninklijke Philips :
Electronics, N.V., Victor Company of : C.A. No. 09 CV 7114 (WGY)
Japan, Ltd., and Sony Corp., :
:
                Plaintiffs, :
:
:
        -against- :
:
Haier America Trading, L.L.C., Haier :
Group Co., and HAIM L.L.C., f/k/a Haier :
America Import, L.L.C., :
:
                Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF HARLEY MYLER

      I, Harley Myler, declare as follows:

      1.      I am currently employed as a Professor and the Chair of the Department of Electrical Engineering at Lamar University.  I have personal knowledge of the facts set forth herein and, if called to testify, could and would testify competently thereto.

      2.      I have been retained as a technical expert by the plaintiffs in connection with the present patent infringement action and have been asked to provide opinions with respect to the following 15 patents in suit (hereafter referred to collectively as the "Studied Patents"): (1) U.S. Patent No. 6,175,718; (2) U.S. Patent No. 7,051,359; (3) U.S. Patent No. 7,051,361; (4)

U.S. Patent No. 7,080,401; (5) U.S. Patent No. Reissue 36,980; (6) U.S. Patent No. 5,488,418; (7) U.S. Patent No. 5,734,430; (8) U.S. Patent No. 5,793,432; (9) U.S. Patent No. 6,104,436; (10) U.S. Patent No. 6,184,938; (11) U.S. Patent No. 6,480,239; (12) U.S. Patent No. 6,937,292; (13) U.S. Patent No. 7,199,836; (14) U.S. Patent No. 5,684,541; and (15) U.S. Patent No. 5,459,789.

3. In connection with my engagement as an expert in this case, I reviewed each of the Studied Patents as well as a variety of other materials, including the file histories of the Studied Patents, the relevant technical standards, certain of the accused devices, documents and discovery responses obtained or provided by plaintiffs in connection with this action and publicly available documents, for the purposes of forming opinions on the following subjects as to which I expect my testimony in this action may relate: (1) an overview of digital television broadcast transmission and the ATSC standard; (2) the subject matter and methods described in the Studied Patents; (3) the essentiality of the Studied Patents to the ATSC standard or the MPEG-2 systems standard; (4) defendants' accused digital televisions and digital television/DVD combinations; and (5) the defendants' infringement of the Studied Patents.

4. The conclusions and opinions I formed as a result of my review of the above-referenced materials are described in my expert report dated February 28, 2011 (the "Report"), which I understand was served on the defendants on February 28, 2011 and which I understand will be provided separately to the Court. The Report accurately reflects my opinions, conclusions and expected testimony concerning the defendants' infringement of the Studied Patents and the factual bases for those conclusions. The Report also accurately describes my personal background and qualifications, which are set forth in Paragraphs 6 through 19 of the Report and are further described in my curriculum vitae, which is attached hereto as Exhibit A.

5. As described in Paragraph 35 of the Report, as of the filing date of the Studied Patents, a person of ordinary skill would have:  (1) a degree in engineering or one of the physical sciences; (2) a minimum of 5 years of experience with digital television technology; and (3) a general knowledge of digital telecommunications.  A person with an advanced degree in a relevant field, such as electrical engineering, would, however, require less experience with digital television technology.

6. As described in further detail in Paragraphs 36 through 54 of the Report, the ATSC standard defines a system for terrestrial broadcast and reception of digital television via radio frequency channels over the air.  In 1995, the Federal Communications Commission ("FCC") adopted the ATSC Digtial Television Standard for digital terrestrial television broadcasts and reception.

7. Based on my review of the materials described in Paragraph 3 above, I have concluded that each of the Studied Patents with the exception of one (U.S. Patent No. 5,459,789 ("the '789 Patent")), is essential to the ATSC standard.  The '789 Patent is essential to the MPEG-2 systems standard, which is mandatory for the ATSC standard, such that the accused devices could not practice the MPEG-2 standard without infringing the '789 Patent in the absence of a patent license.  By "essential," I mean that they are necessarily infringed when practicing the relevant standard without a patent license.  It is my opinion that each of the asserted claims of the Studied Patents covers all implementations of the ATSC Standard or the MPEG-2 Systems Standard, and that the accused television products cannot comply with the relevant standard without practicing the asserted claims.  I am not aware of any ways to circumvent the asserted claims of the Studied Patents by performing certain actions required or

recommended by the relevant standard in a manner that avoids infringement.  The bases for these conclusions are described in further detail in Paragraphs 55 through 71 of the Report.

8. I understand that the accused products include a number of digital televisions and digital television/DVD combinations.  Defendants' internal documents show that these accused television products include an ATSC tuner.  This ATSC compatibility is consistent with the plan developed by the FCC, which phased in a requirement for television receiver manufacturers to include capability for tuning and decoding over-the-air digital television signals.  I inspected certain of the accused products that were taken apart to see the make and model of the ATSC integrated chip inside and observed and tested certain of the digital television products.  In my opinion, it is highly likely that other accused products having the same integrated circuits would operate in the same manner as the models I have observed and tested.  In addition, I have reviewed documentation from third-party integrated circuit manufacturers regarding several of the chips defendants identified as included in their products.  Based on this review and my review of the other materials described in Paragraph 3 above, as well as my understanding of the technology, it is my conclusion that the accused television products use the ATSC Standard, including the mandatory MPEG-2 transport stream.  The bases for these conclusions are described in further detail in Paragraphs 72 through 92 of the Report.

9. Based on my review of the materials and devices described in Paragraphs 3 and 8 above and my understanding of the technology, it is my conclusion that the accused products infringe each of the Studied Patents.  The bases for these conclusions, including a claim-by-claim analysis comparing each of the asserted claims of each of the Studied Patents to evidence of defendants' infringement is set forth in Paragraphs 92 through 314 of the Report.

10. As described in further detail in the Report, I was unable to complete my review of source code that plaintiffs' counsel had sought from defendants' third-party chip suppliers before the February 28, 2011 deadline for expert reports because the chip suppliers had either not produced their source code or, in the case of one chip supplier, had not agreed to provide hard copies of its source code until after the deadline of my Report. (Report ¶¶ 4-5, 22.) Since the date of the Report, I have had the opportunity to further review such third-party source code and my review of that source code is ongoing. This review may provide additional support for my conclusion that defendants have infringed each of the Studied Patents and, as indicated in the Report, I reserve the right to supplement my opinions on infringement following the completion of this review. (Report ¶¶ 4-5, 22.) However, nothing I have learned from my review of that source code or from any other source since the date of my Report would cause me to question or change any of my conclusions in the Report that defendants' accused products infringe the Studied Patents for the reasons described in Paragraphs 92 through 314 of the Report.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 31, 2011 at Beaumont, Texas.

/Harley Myler/
Harley Myler