1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
2
                                              Civil Action
3                                             No. 09-07114-WGY

4

5    * * * * * * * * * * * * * * * * * * * * * *
     British Telecommunications plc, CIF Licensing  *
6    L.L.C., GE Technology Development, Inc.,        *
     Fujitsu Limited, LG Electronics, Inc.,          *
7    Mitsubishi Electric Corp., Samsung Electronics  *
     Co. Ltd, Thomson Licensing, The Trustees of     *
8    Columbia University in the City of New York,    *
     U.S. Philips Corp., Koninklijke Philips         *
9    Electronics, N.V., Victor Company of Japan,     *
     Ltd. and Sony Corp.,                            *
10                                                   *
             Plaintiffs,                             *
11                                                   *
     v.                                              *
12                                                   *
     Haier America Trading, LLC, Haier Group         *
13   Co., and HAIM L.L.C., f/k/a Haier America       *
     Import L.L.C.,                                  *
14                                                   *
             Defendants.                             *
15   * * * * * * * * * * * * * * * * * * * * * *

16            MOTION HEARING VIA VIDEOCONFERENCE

17            BEFORE:  The Honorable William G. Young,
                       U.S. District Judge
18
19   APPEARANCES:

20            SULLIVAN & CROMWELL LLP (By Garrard R.
         Beeney, Esq. and Marc DeLeeuw, Esq.) 125 Broad
         Street, Suite 2516, New York, New York 10004, on
21       behalf of Plaintiffs

22

23                                  1 Courthouse Way
                                    Boston, Massachusetts
24
                                    May 26, 2011
25

```
 1              A P P E A R A N C E S  (Cont'd)

 2

 3          STROOCK & STROOCK & LAVAN LLP (By Steven B.
       Pokotilow, Esq. and Ian G. DiBernardo, Esq.),
 4     180 Maiden Lane, New York, New York 10038, on
       behalf of Defendants
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    **THE CLERK:**  All rise.  Court is in session, please

2  be seated.

3          Calling Civil Action 09-7114, British

4  Telecommunications v. Haier, et al.

5    **THE COURT:**  Good afternoon.  Would counsel identify

6  themselves and who they represent.

7    **MR. BEENEY:**  Good afternoon, your Honor.  This is

8  Garrard Beeney representing the plaintiffs.  To my left is

9  Mark DeLeeuw.

10    **MR. DeLEEUW:**  Good afternoon, your Honor.

11    **THE COURT:**  All right.

12    **MR. POKOTILOW:**  Good afternoon, your Honor.  This

13  is Steven Pokotilow from Strook & Strook & Lavan,

14  representing the defendants, and Ian DiBernardo representing

15  defendants.

16          And, your Honor, if you could just let us know, do

17  you want us to stand or do you want us to sit or what?

18    **THE COURT:**  Well, given the table you're at, I

19  think it's inconvenient.  So you may feel free to sit and

20  I'll indicate if I can't hear you.  Why don't you sit and be

21  comfortable.

22    **MR. POKOTILOW:**  Thank you, your Honor.

23    **THE COURT:**  Let me go over the protocol for this

24  hearing occasioned in part by the video nature of it.

25          First, if I look down it's going to look to you

1   like I've gone to sleep.  I have not gone to sleep.  I have

2   all your papers here and I've done my best to prepare for

3   this hearing.

4            Second, because there's a very slight delay between

5   our two stations, I will raise my hand if I want to say

6   something in the middle of your presentation.  That's a

7   signal for you to stop because I have a question or a

8   comment.

9            Now, we have a variety of motions this afternoon.

10  I've read them all.  I believe that I am prepared for oral

11  argument.  Oral argument will not exceed 15 minutes a side.

12  You ought to focus your oral argument on what motion or what

13  legal argument you think most significant.  Don't be bound

14  or characterized by the other side.  Use your time to make

15  the strongest arguments that you can make.  And we'll

16  proceed defendants first and then plaintiffs.

17           So we'll hear from the defendants.

18           **MR. POKOTILOW**:  All right.  Your Honor, again, my

19  name is Steven Pokotilow.  I represent the defendants.  And

20  the first motion we'll treat briefly will be the motion to

21  dismiss HGC, Haier Group Company, from the lawsuit, your

22  Honor.

23           Basically, I won't restate our position.  I think

24  the evidence establishes that there is, with the exception

25  of the admission there is not a scintilla of evidence that

1   would refute the fact that HGC is a Chinese corporation.

2   It's a holding company.  It doesn't make, use or sell

3   products.

4           Oh, I'm sorry, your Honor.  I'm sorry.  Now I got

5   it.  I'm learning.

6           **THE COURT:**  So am I.

7           Well, your argument candidly says with the

8   exception of the admission.  But you've tried to withdraw

9   that admission, I've denied it, and I don't have to

10  characterize anything else.  I've denied it.

11          So, having denied it that's law of the case and you

12  people are here, aren't you?  What's the -- what additional

13  basis have you for this motion at this juncture?

14          **MR. POKOTILOW:**  Okay.  When you denied it, your

15  Honor, it was not based on the facts as they're presented to

16  you.  There's no proof that could be presented that my

17  client made, used or sold these products.  As a question of

18  liability, under the patent statute if you haven't made,

19  used or sold a product in the United States you haven't

20  infringed.  The claim is infringement.  And we're saying

21  there is no evidence of infringement and therefore given the

22  test that we cite in Ppx where the Court may ignore an

23  admission if, you know, following the admission will result

24  in either a, quote, manifest injustice or in this case where

25  substantial evidence that it's contrary to the admission.

1        So, in essence, your Honor, what we're really

2    saying is that since there's been no sale of a product,

3    since there's been no use of a product, since there's been

4    no offer for sale of a product by this mere holding company,

5    in essence there would be no remedy against it.  It hasn't

6    infringed the patent.  There could be no damages against it.

7    So, therefore, in essence the claim is a legal nullity.

8        I think it's cast slightly different than the

9    motion on the pleadings that your Honor denied earlier.  I

10   also think that the record is more fully ventilated at this

11   point, and I would suggest, your Honor, given the fact that

12   we've been established two things.  Number one, we've

13   established that prior counsel copied our pleading.  There's

14   evidence from the deposition of the HGC lawyer in China that

15   it was never, this answer was never reviewed by them before

16   it was served.  There was no intention to mislead the Court

17   or bind the party.  Under those circumstances, your Honor,

18   we believe that there's a sound basis.  And so -- and there

19   would be no prejudice to the plaintiffs because they still

20   have HAT in the case.

21       So, under the circumstances there would be no

22   remedy against the, against the defendants because they

23   haven't made, used or sold the products and therefore there

24   wouldn't be any damages.

25       Having said all that, your Honor, I will say under

1   Rule 8(e), and all these cases talk about when an admission

2   can be contradicted, I would say under Rule 8(e) a pleading

3   must be construed so as to do justice.   And in this case, I

4   just believe a mistake was made by the previous counsel and

5   that there's no basis for binding the client when the

6   ultimate result is that HGC is not in the United States and

7   doesn't, as I said, commit the acts of infringement that are

8   alleged.

9           I'll leave it at that, your Honor.   But that's the

10  sense of why this is different in posture than the original

11  motion where we asked you to amend the pleading.

12          **THE COURT:**  Go ahead.

13          **MR. POKOTILOW:**  I believe the evidence clearly

14  outweighs the admission.

15          **THE COURT:**  Go ahead.

16          **MR. POKOTILOW:**  And, your Honor, I'll now defer to

17  Mr. DiBernardo and let him take the rest of the time to

18  speak about the other motions, the infringement, willful

19  infringement and notice motions.   Okay, your Honor?

20          **THE COURT:**  Yes, he may proceed.

21          **MR. DiBERNARDO:**  Thank you, your Honor.

22          Turning first to the issue of willfulness.   There

23  are factual issues that preclude a finding that defendants'

24  acts as alleged were willful.  Plaintiffs have a high

25  burden, it's a clear and convincing standard that creates a

1   specially high barrier to a finding on summary judgment.

2   And I'll focus on what I, what I think is perhaps the most

3   apparent and that is plaintiffs inability to satisfy the

4   subjective prong of Seagate.

5          There's been discovery in this case, testimony from

6   Haier America's president, former president and CEO and

7   employee both confirming that Haier America believed the

8   products they purchased were from licensed factories.  I can

9   give your Honor the cites if you would like.  It was in our

10  supplemental filing yesterday.  But basically, they believe

11  the factory was handling the licensing issues and that,

12  quote, the CEO, Mr. Jemal, the general assumption is that

13  the products were fully licensed.  There's testimony from

14  both the 30(b)(6) witness and the employee to that same

15  effect.

16         Moreover, there's documentary evidence to confirm

17  not only that the suppliers were indeed licensed by MPEG LA

18  under the patents at issue but also documents that confirm

19  that it was Haier America's belief that the products they

20  acquired from the suppliers were covered by those licenses.

21  Those documents, your Honor --

22         THE COURT:  Help me out here.  You're making a

23  logical argument.  I understand it.  But haven't you got the

24  cart before the horse.  I don't understand you to concede

25  infringement, and unless we have infringement I'm not even

1   interested in willfulness.  So, for the purposes of this

2   motion in essence you're conceding infringement, aren't you?

3       MR. DiBERNARDO:  No, your Honor.  It was merely a

4   matter of efficient use of our time.  As stated in our

5   papers, a finding of infringement, we certainly believe the

6   plaintiffs fail to carry their burden on infringement, and

7   I'll get to that next.

8       THE COURT:  All right.

9       MR. DiBERNARDO:  But, of course, until there's a

10  finding of infringement there can be no willfulness.

11       So, just to finish the discussion on willfulness

12  then, your Honor.  The documents that were provided to your

13  Honor this morning are those documents that confirm

14  suppliers were licensed and confirm Haier America's belief

15  that the products were indeed licensed.

16       For example, at tabs 1 and 3, and I'm happy to go

17  through them if you desire, but tabs 1 and 3, for example,

18  go to confirming that suppliers were licensed.  Tab 1, for

19  example, our supplier ATLM provided proof that they entered

20  into a license under the asserted patents.  Under that tab

21  there's also a purchase order from Haier America to that

22  supplier showing that accused products were indeed purchased

23  from that licensed supplier.  The same with tab 3.

24       Tabs 2 and 5 are e-mails that show the belief that

25  the factories were providing licensed products.  Tab 2, for

1   example, is an e-mail, quote:  It's quite clear that the

2   supplier is responsible for the intellectual property.

3          Turning then to infringement, your Honor.  We

4   believe the plaintiffs, the plaintiffs fail to meet their

5   burden.  They did not read the claims on the products.  In

6   fact, although they --

7          **THE COURT:**  Hold on.

8          They've submitted -- aren't they to the fact

9   finder?  They've submitted expert reports which -- you see,

10  looking -- you've got a motion for summary judgment on

11  infringement.  You want me to rule as matter of law that

12  there's no infringement.  And if I do that the case is over.

13  But I have, on your motion, I have to draw all inferences in

14  their favor.  And they have expert reports that adequately

15  carry the burden and get them to the jury, don't they?

16         **MR. DiBERNARDO:**  They do not, your Honor.  And we

17  can --

18         **THE COURT:**  Why not?

19         **MR. DiBERNARDO:**  -- address the expert reports.

20         First, the expert reports do not read the claims on

21  any product.  The plaintiffs fail to address all the

22  products.  They only looked at three out of seven of the

23  accused infringing chips.  They don't even address 4 and 7.

24         **THE COURT:**  Wait.

25         You may be right as a matter of persuasion, and if

1    I try this case I'm holding these plaintiffs to their expert

2    reports.  They're not going to say one word that's not in

3    the expert report.  So whether they can persuade the jury

4    based upon these expert reports is in my mind a rather

5    interesting proposition.  But there is no requirement that

6    on the issue of infringement, and if there is you tell me

7    what it is, that they have to proceed in any more detail

8    than they have proceeded here, especially with their

9    reference to Fujitsu.  It seems to me that that gets them to

10   the fact finder and necessarily defeats your motion.  That

11   doesn't mean they win.  But it means -- I don't see how you

12   can win on a motion for summary judgment.

13        MR. DiBERNARDO:  The reason summary judgment of

14   noninfringement should be granted is because plaintiffs fail

15   to meet the condition precedent stated in Fujitsu, a

16   condition precedent to relying on those technical standards.

17   And to quote Fujitsu:  If a district court construes the

18   claims and finds that the reach of the claims include any

19   device that practices a standard that's when a plaintiff can

20   rely on a standard.  When the claims include any device, all

21   devices, all implementations of a standard.  And on this

22   record, it is insufficient to determine that to be the case.

23   The plaintiffs have not shown --

24        THE COURT:  But their experts say that it is

25   sufficient.  And isn't that a matter of fact, not law.

1    We'll see what a jury says.

2         MR. DiBERNARDO:  As explained in our papers, your

3    Honor, the mere conclusory statements which are simply

4    repeated verbatim for each patent without explanation are as

5    a legal matter insufficient to carry plaintiffs' burden.

6    That's the Novartis case and the Reigel case.

7         THE COURT:  All right.  Now, now, thank you.  So

8    I'm going to focus on that.  Because my understanding, after

9    Koito, was that with respect to infringement, especially in

10   the Fujitsu situation, a conclusory approach such as these

11   experts have taken was at least sufficient to get them to

12   the fact finder.  You disagree with that?

13        MR. DiBERNARDO:  I do disagree and the reason is

14   plaintiffs here have not met that condition precedent of

15   proving that the patents cover every implementation of the

16   standards.  And I can give your Honor an example and --

17        THE COURT:  Well, you've got about two minutes

18   more.

19        MR. DiBERNARDO:  Well, with that then, your Honor,

20   I think I'll turn quickly then to the notice issue.  We

21   believe that the notice, that there was no notice.  The

22   documents we have provided to you actually show that at the

23   time MPEG LA, the licensing agent, was providing these

24   letters, MPEG LA being the only entity that sent the notice

25   letters, or the alleged notice letters here, they

1   acknowledged and understood they were insufficient to

2   provide notice under 287.  And that would be tabs 8, 9 and

3   10 that we have provided.  And just to give you a sense as

4   to what MPEG LA believed, they state, quote:  Actual notice

5   is between the patent holder and the addressee.  They knew

6   it had to come from the patent holder.  In fact, the only

7   alternative as opposed to having each individual patent

8   owner provide a separate notice letter was to have a joint

9   letter signed by all of the licensors, dozens of entities.

10  They clearly understood it was a requirement --

11          THE COURT:  Well, but --

12          MR. DiBERNARDO:  -- that the patent owner provide

13  notice.

14          THE COURT:  Well, whatever they understood it's

15  matter of law.  There is law that one in the position of

16  this MPEG is legally enabled to give notice on behalf of the

17  patent holder.  There's Federal Circuit authority for that.

18          MR. DiBERNARDO:  Your Honor, the one case that

19  plaintiffs rely on, Philips, is an exception to the general

20  rule that does not as a matter of law fly here.

21          THE COURT:  Thank you.  I'll take -- I hear your

22  argument.  We'll turn to the plaintiffs.  Fifteen minutes.

23          MR. BEENEY:  Thank you, your Honor.

24          If your Honor please, let me start with the

25  infringement issue.

1     **THE COURT:**  All right, let me push back on

2  infringement.  You bear the burden on infringement.  How can

3  you possibly get summary judgment on infringement in light

4  of Reeves v. Sanderson Plumbing which says I am to disregard

5  everything that a jury might disregard.  So I'm left here

6  not with your expert reports and all those things that

7  you've proffered, I'm left with only those things that they

8  actually admit.  This business of point, counterpoint and

9  they didn't deny it, I have to say after Reeves, I think

10  that doesn't square with the Supreme Court's determination

11  of what Rule 56 means.  It's very hard for me to see -- I'm

12  not saying you can't win the case.  How are you going to get

13  around Reeves on summary judgment?

14     **MR. BEENEY:**  I think the answer is, your Honor, as

15  your Honor said, we have evidence to get to a jury.  And

16  there is no evidence in this record whatsoever, none, that

17  would permit a juror to reject our evidence of infringement

18  other than --

19     **THE COURT:**  I'll give you one.  You bear the burden

20  of proof.  They don't believe it, end.

21     **MR. BEENEY:**  But I don't believe, your Honor, that

22  in light of the evidence that we have, which includes not

23  just comparing to the standard but also looking at the

24  source code, looking at the accused products, opinions that

25  the experts have reached, that you can't comply with these

1    standards, which Haier admits they complied with the

2    standard, you can't comply without infringing each of the

3    asserted claims of each of the patents.

4           With that evidence, with those opinions that are

5    buttressed by all of the 921 pages of expert reports, there

6    is no evidence that Haier has put into this record that

7    suggests that the jury could reject that evidence.  There's

8    nothing that the jury can hang their hat on that says okay,

9    I understand why I can reject that.  There's nothing.

10   There's nothing at all.

11          **THE COURT:**  Respectfully --

12          **MR. BEENEY:**  To this date --

13          **THE COURT:**  Respectfully, you people seem to

14   misunderstand the jury system.  So we've got 921 pages of

15   paper.  You bear the burden of proof.  Now, maybe the jury

16   in its wisdom doesn't think this is terribly persuasive and

17   so they reject it.  You're trying to have me conflate fact

18   finding, which I am very careful not to do on summary

19   judgment, with, with legal rules.  I understand, or I have

20   little hesitancy in stating that but for their arguments --

21   now, I've got to go back and look at Novartis and what he

22   cited.  Your expert reports are fairly conclusory.  Maybe

23   the Fujitsu situation saves you.  We'll see about that.  But

24   I just don't understand how, where you have the burden of

25   proof, that you -- you may very well reach the jury or a

1    fact finder may have to wrestle through this, but why should

2    I spend the time going line by line?  Why shouldn't I just

3    deny this in view of Reeves?

4        MR. BEENEY:  Let me cite to your Honor the Federal

5    Circuit in Fujitsu at 1327.  And that was a case, your

6    Honor, in which the context of that hearing was on summary

7    judgment.  There the Federal Circuit said, at 1327, quote:

8    We hold that a district court may rely on an industry

9    standard in analyzing infringement.  If a district court

10   construes the claims and finds that the reach of the claims

11   includes any device that practices a standard then this can

12   be, is sufficient for a finding of infringement.

13       Now, there is no evidence in this record, your

14   Honor, there is zero evidence that Haier has put to contest

15   that they infringe.  Today, in their papers, they claim they

16   don't even know.

17       THE COURT:  Wait.  Wait.  Try to get your mind

18   around what I just said.  You are right, it seems to me, on

19   the record.  This is the question I put to you.  In Reeves

20   v. Sanderson Plumbing, and that's the Supreme Court of the

21   United States, the Supreme Court says on summary judgment

22   the district judge should disregard any facts not admitted

23   by the other side which the jury was free to disregard.

24       Now, you bear the burden of proof on infringement.

25   The jury is free to disregard everything that you've

1    proffered.  And I conceive it my duty to disregard it.  I'm

2    left only with those things that Haier admits.  And they

3    don't admit infringement.  Or they don't admit facts that

4    amount to infringement.  I'm not saying you don't win.  I'm

5    saying I have a great deal of trouble figuring out how you

6    win today.

7         MR. BEENEY:  Well, what I would respectfully

8    suggest to your Honor is that a jury verdict has to be based

9    not on surmise, not on speculation, it has to be based on

10   evidence.  And the jury on the state of the current record

11   will have no evidence whatsoever that there is no

12   infringement here.  And consequently, I do not believe a

13   reasonable juror could reject the evidence of infringement

14   because there's no evidence of anything other than

15   infringement.  Haier today says they don't know if they

16   infringe.

17         THE COURT:  When you, when you --

18         MR. BEENEY:  There's just nothing that a juror --

19         THE COURT:  -- study evidence -- don't you

20   understand the difference between the burden of going

21   forward, which it appears you have met, I'll concede that,

22   and the burden of persuasion, which is for a fact finder.  I

23   sit here today not as a fact finder.  And simply telling me

24   that no reasonable jury could disbelieve this complex stack

25   of documents is, and I say this respectfully, unpersuasive.

1    Maybe they don't understand it.  Your burden is to make them

2    understand it.  Maybe you fail.  Trials are living things.

3          I have prepared for this.  I'll tell you it looks

4    to me like you've met your burden of going forward.  It

5    looks like a fact finder's going to have to sort this all

6    out.  But on the present procedural position that fact

7    finder is a jury sitting in White Plains, and that jury is

8    free to reject this it seems to me.

9          What else, what else are we dealing with?

10         **MR. BEENEY:**  Let me move on then, your Honor, to

11   the Haier Group Corporation motion.  There are two reasons

12   why that should be denied.  One is, as your Honor

13   recognized, the Haier defenses are subject to their

14   admission that they sell in this judicial district the

15   accused products.  It would not be much of a sanction if

16   they were now relieved of the burden of their answer and the

17   admission of their answer.  And even further than that, your

18   Honor, that answer is fully consistent with the evidence and

19   certainly not susceptible to determination of summary

20   judgment.  They point fingers to each other.  They tell us

21   to go talk to one company, then it's another company.  They

22   sell the products to people in the United States.  Don't

23   make any distinction between the companies in China.  They

24   use the same web mail address, they're all located at the

25   same place.  There's plenty and plenty of evidence that

1    suggests that for the purposes of the activities alleged in

2    the complaint that they are the same company and for the

3    purposes of this motion it should be denied even

4    notwithstanding the admission.  But the admission is the

5    admission.  And therefore that motion should be denied, and

6    I would move on to notice if I may, your Honor.

7         **THE COURT:**  I'm troubled by notice and I wish you

8    would.  It seems to me we have sharp divisions of fact with

9    respect to the notice and I'm eager to hear you.

10        **MR. BEENEY:**  Thank you, your Honor.

11        Let me say this about notice.  Section 287 does not

12   lay out any formula that you're required to check off the

13   boxes.  And defendants' motion is based on a formalistic

14   notion of what notice is all about and taking snippets of

15   cases based on certain facts out of context.  The only thing

16   the statute says is that, quote, in order to give notice the

17   defendant must be given -- sorry -- that the infringer was

18   notified of the infringement and continued to infringe

19   thereafter.

20        Now, the trilogy of cases from the Federal Circuit,

21   SR International, Gart and Ralston, all stand for the

22   proposition that you need to do three things in order to

23   give legal notice:  The identity of the patents, not

24   necessarily the patent numbers, the activity that is

25   believed to constitute infringement, not necessarily every

1    device that you allege to infringe, and third, a proposal to

2    abate.  And the early notices that were given to defendant

3    here fully met the requirements that the Federal Circuit has

4    laid down.  In all of the communications between MPEG LA and

5    the defendants here, more than a hundred times there were

6    statements that Haier infringed.  More than three times they

7    were given a patent list.  More than twelve times they were

8    given reference to the website where they could find all

9    sorts of information about who owns the patents, what the

10   patents are, the numbers of the patents, the nature of the

11   licensing program, and more than ten times they were sent

12   licenses that they could sign to abate the infringement.

13   It's ludicrous to suggest that they did not give adequate

14   notice.

15           Now, to go to the earliest notice letters that we

16   rely on, there was a letter sent on April 10, 2001, and in

17   fact it was sent twice.  It was also sent on June 6th, 2001.

18   That letter had with it a list of all the asserted patents

19   that were in the program at the time.  It had with it the

20   names of the patent owners.  It had with it a proposal to

21   abate the infringement.  It had with it a statement that you

22   infringe by using the MPEG-2 standard and gave as an example

23   a DVD player.  And, of course, Haier knows which of its

24   products use MPEG-2 technology.  So it met all the

25   requirements of the Federal Circuit.

1          The same with the October 2007 voice mail and

2     e-mail.

3          **THE COURT:**  Here's a question that just now

4     occurred to me on this notice issue.

5          Suppose summary judgment on the issue of notice --

6     and there are different letters at different times, and I'm

7     really expressing no opinion.  But let's suppose when the

8     dust settles I'm of a mind that summary judgment now,

9     summary judgment, cannot be granted on this notice issue and

10    there are factual disputes.  Who decides those factual

11    disputes, a judge or a jury?

12         **MR. BEENEY:**  A jury does, your Honor.

13         **THE COURT:**  Thank you.

14         **MR. BEENEY:**  And just to continue with the ATSC

15    notice in 2007 it talked about the fact that your use of

16    ATSC and your products infringe, it gave an example of a

17    television set, it gave access to where you would find a

18    list of the patents.  So I think it is clearly the case that

19    there was adequate notice.

20         Just as a footnote, your Honor, the 2001 letter,

21    there's some debate in the briefs as to exactly what Haier

22    received.  And now as a result of the deposition that was

23    taken on May 10th we know why there's a debate whether this

24    letter was received.  Because the person who was in charge

25    of Haier Group's document production, contrary to their

obligations under the federal rules and contrary to your

Honor's order, failed to even look in the files of the

person who received that letter.  She freely admitted that

she didn't think it was necessary.  Knowing the significance

of that letter, knowing who it was sent to, she never even

looked in the files.  And, in fact, the entirety as shown in

that May 10 deposition of Haier's alleged compliance with

its discovery obligations, was that she looked at something

like 20 to 40 documents, produced two of them, and never

searched for correspondence.  And that's in the supplemental

filing that we made to your Honor last week.

          **THE COURT:**  About two more minutes, sir.

          **MR. BEENEY:**  So, your Honor, that is notice.  I

don't know whether your Honor would like me to address

willfulness, but maybe what I should do is move on to just

address that briefly in the event that we are able to have

convinced your Honor that we should have gotten summary

judgment on infringement.

          And just briefly, there's no doubt that there's a

bit of evidence in this record that Haier thought that some

of its factories had a license.  But there's also no doubt

that Haier was told of its infringement for ten years.  It

was given examples of its infringing products.  Its internal

documents said we have a problem here.  Its internal

documents said let's keep on infringing and not worry about

1    it, maybe they won't come after us for back royalties.  Its

2    internal documents said let's bank the money and worry about

3    it later.  They were told of their infringement by their

4    suppliers.  They were told of their infringement by their

5    customers.  Their internal documents noted their own

6    infringement.  There is textbook evidence here that they

7    willfully infringed.

8          Now, what did Haier do in light of all this

9    evidence.  They didn't seek any kind of opinion.  They

10   didn't go to any expert.  There's no evidence they even

11   looked at the patents.  There's no evidence that they sought

12   to abate their infringement in any respect.  They didn't try

13   to design around the patents.  They did nothing but try to

14   delay and infringe.  And I submit to your Honor that is

15   textbook willful infringement.  Our law requires more.

16         **THE COURT:**  Thank you.

17         Now, here's what we're going to do.  First, let me

18   say this oral argument has been very helpful to me and I

19   appreciate the efforts of all counsel in that regard.

20         I do have some comments for your guidance in the

21   further handling of this lawsuit, and the first is this.

22   Now is the time to take a deep breath, on both sides here,

23   all parties, and sit down to see if you can resolve this

24   before it goes any further.  This is a case that cries out

25   for competent business lawyering to work out how we're going

1     to go forward here.  The courts, at the very best of

2     analysis and effort, can hardly be thought by your clients

3     to be a cost benefit to you at this stage.  And so, we're

4     going to proceed, as follows.

5           I take these matters under advisement.  All of

6     them.  Parties ought not draw conclusions as to possible

7     outcomes or possible results.  I ask questions at oral

8     hearings because I am interested and I advance tentative

9     arguments to see what you will say.  My mind is open as to

10    all of these matters.

11          On the 2nd of June, that's a week from today,

12    Ms. Smith is going to call you, both sides, and she's going

13    to ask you whether you want further time to talk settlement

14    or whether you want the rulings on the motions for summary

15    judgment.

16          Now, the spectrum of possible rulings, theoretic

17    rulings, run the, run the entire, most of the entire course.

18    If this goes all the defendants way as to some of these

19    motions the case is over, and even if it goes partially the

20    defendants way the case is significantly limited.  If it

21    goes the plaintiffs way all we have left is damages.  The

22    case is over as far as liability and we've got a damages

23    case.  So now is the time to talk settlement.

24          And you can tell her whatever you want.  If you

25    want more time to talk settlement and you want me to stay my

hand on the motions for summary judgment, we will for a
couple of weeks into June.  In other words, we're either
going to settle this or it's time to get it on the trial
track.

Let's assume, and there's no pressure on you to
settle, it's just an opportunity to settle, let's assume you
don't settle and you tell her that.  The next thing she's
going to ask you is she's going to reiterate an offer I made
at the outset of my responsibility with the case, and I make
it in good faith now again.

There's nothing special about me and you can all
take your own conclusions about whether you want me to
preside over this case.  And I'm not coming to New York.  I
have plenty of work to do.  But I have worked hard on this
case and I find it fascinating, and I think you people are
right up to the mark.  And if any of this case is left
standing, I would be proud to be the presiding officer.

There's two ways we could do that.  You could agree
to transfer it to Massachusetts, and since I'm the New York
judge, as the New York judge I would transfer it to myself
in Massachusetts.  You still get your jury, but it's a
Massachusetts jury.  Of the six or seven patent cases I've
gotten in New York, three of them have decided they would
rather come to Massachusetts just that way, and I'll do that
here if you want.  No pressure.  If you don't want that, but

 1    you are willing to go jury waived, I will preside over it

 2    and we'll resolve the matter jury waived.  Or if you're

 3    willing to go jury waived in part, I'll preside over that.

 4              The carrot that I throw out to you for that is I

 5    promise you I'll get the matter resolved this year.  I won't

 6    say this summer.  This year.

 7              So she'll ask you the first question:  Do you want

 8    more time to talk settlement?  You say no.  She'll ask you

 9    the second question:  Do you want the judge to be the

10    presiding judge?  She will not tell me if anyone, which side

11    says no or whether both sides say no.  So long as one side

12    says no that's enough.

13              So we'll assume that one or both sides want me to

14    wind up my responsibility here.  In that event, I will rule

15    on the motions for summary judgment and I will schedule a

16    preliminary final pretrial conference, while I'm still in

17    charge.  And we'll enter an order as to what you have to do

18    for that and we will hold that.  We can hold that by

19    telephone.  And when I'm done with that, I'm sending it back

20    to New York.

21              Now, I have the utmost respect for my colleagues in

22    the Southern District.  And I understand how hard they work

23    because it's difficult to schedule courtrooms in the

24    courthouse where you now are meeting.  And they're working

25    all out.  And I do understand that a successor has been

1   confirmed to Judge Robinson whose case this was.  I have

2   nothing to say about which judge is going to get this.

3   That's the internal rules of the Southern District.  But my

4   experience is the likelihood is you won't get a trial this

5   year.  So that's the benefit.

6              **MR. POKOTILOW:**  Judge, we've lost the sound.

7              **THE COURT:**  What --

8              **THE CLERK IN NEW YORK:**  Can you give us a second?

9              (Pause in proceedings.)

10             **THE CLERK IN NEW YORK:**  Can you speak, sir?

11             **THE COURT:**  Yes.  Can you hear me now?

12             **MR. BEENEY:**  Yes, we can.

13             **THE COURT:**  All right.  I'm simply going back to

14  saying how much I respect the judges in the Southern

15  District, how hard they work, and I understand the successor

16  to Judge Robinson has been confirmed.  The likelihood is,

17  though, and you people are practical attorneys, that if I

18  send a patent case back, no matter how detailed my pretrial

19  order, it's not going to get tried this year.  There's a

20  benefit to you to get this matter resolved.

21             Now, one other comment I make.  Don't think we're

22  going back to discovery in this case.  Your various motions

23  make mention of discovery.  We're not going back to

24  discovery.  But now having said that there's one exception.

25             This notice business does resonate with me.  And I

1    think the plaintiffs would be well advised, I do not order

2    it, but they would be well advised to make Ms. Harvey

3    available for deposition promptly and when that deposition

4    is taken, I would be interested to see what she has to say

5    under oath.  I wouldn't strike her declaration, but that's

6    not cross-examination.  So I would be interested to see what

7    she says.  But I'm not waiting on it.  And that's just

8    advice.  Whether I order something, we'll see if I'm

9    speaking to the motions for summary judgment.

10          Now, that's all I have to say.  Let me simply ask

11    if there's any questions and we'll call this to an end.

12    We'll go in the order that I let you argue, so we'll ask the

13    defense first.

14          Any questions?

15    **MR. POKOTILOW:**  Yes, your Honor.  One question I

16    have is right now we have a set date for a pretrial order.

17    Is it the Court's, from what you have said, is it your

18    understanding then that we would wait until you decide the

19    motions before we complete the pretrial orders?

20    **THE COURT:**  No, complete --

21    **MR. POKOTILOW:**  Because right now we have a June, I

22    think 6th deadline.  June 6th deadline.

23    (Whereupon the Court and the Clerk conferred.)

24    **THE COURT:**  Oh, Ms. Smith -- actually that's a very

25    good point.  Let's stay on that and see where you all stand

```
 1    on the 2nd.  I don't want you to waste money.  Once we see
 2    where we stand on the 2nd, if anything's alive, we'll have
 3    the clerk send out an appropriate order and set a time for a
 4    first, because the trial judge will have to conduct another,
 5    but the first pretrial conference.  And that's a very
 6    good point.  That's how we'll proceed.  Save your money and
 7    talk settlement.
 8              Any other questions?
 9              MR. POKOTILOW:  Okay, the second point --
10              THE COURT:  Yes.
11              MR. POKOTILOW:  Yes, your Honor.  It's actually a
12    statement.  I think counsel would agree, my opposing counsel
13    would agree with me that we actually have been engaging in
14    some settlement discussions.  There is one problem which I
15    would make, I want to alert the Court to.  And that is
16    obviously to the extent that settlement, there's two parties
17    and one of them is in China, it slows down the process a
18    bit.  And so as a result of it, I was only saying to the
19    Court that if we seek your indulgence it will be in part
20    because, for more time, it's in part because of the inherent
21    delay that goes on in that situation.
22              THE COURT:  That's a fair statement, but I can give
23    you how I respond.  If you both tell Ms. Smith you want more
24    time to talk settlement that's an indication that you're
25    making headway.  But if one side says I want more time and
```

1    the other side says no, let's get going, and we resolve

2    who's going to preside over the case, I'm going to enter

3    these rulings on the motion for summary judgment and that's

4    probably going to change the landscape.  So that's the

5    Damocles sword, if you will.  I'm just not waiting while you

6    tell me you're talking.  But I very much appreciate your

7    statement.  I urge good faith negotiations and I'm pleased

8    to see they're under way.

9             Plaintiff, any questions?

10            **MR. BEENEY:**  No, your Honor.  Thank you.

11            **THE COURT:**  Very well.  I'll take the matters under

12   advisement and I thank you.  We'll recess.

13            **THE CLERK:**  All rise.

14            **MR. POKOTILOW:**  Thank you.

15             (Whereupon the matter concluded.)

```
 1                    C E R T I F I C A T E

 2

 3

 4          I, Donald E. Womack, Official Court Reporter for

 5    the United States District Court for the District of

 6    Massachusetts, do hereby certify that the foregoing pages

 7    are a true and accurate transcription of my shorthand notes

 8    taken in the aforementioned matter to the best of my skill

 9    and ability.

10

11

12

13

14          /S/ DONALD E. WOMACK 5-31-2011
          _____
15                DONALD E. WOMACK
               Official Court Reporter
16                 P.O. Box 51062
            Boston, Massachusetts 02205-1062
17              womack@megatran.com

18

19

20

21

22

23

24

25
```